51 So.2d 725 (1951)
SUTTON
v.
STATE.
Supreme Court of Florida, en Banc.
April 10, 1951.
Hubbard & Carr, of Miami, and Watkins & Cohen, of Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen. and Reeves Bowen, Asst. Atty. Gen., for appellee.
TERRELL, Justice.
The appellant was tried and convicted on an information charging that he did lewdly and lasciviously fondle a female child under the age of fourteen years, contrary to Section 800.04, F.S.A. A sentence of three *726 years in the State penitentiary was imposed and the defendant appealed.
After the jury deliberated two hours without reaching a verdict it returned to the court room and requested the court to advise it as to what punishment would be imposed if the defendant was found guilty. To this request the court replied; "That is none of the jury's business. It is up to the court. The only question for you to consider is his guilt or innocence. If there is anything about the law you want, tell me about it and I would be glad to tell you, but the only thing for you gentlemen to do and the only thing you have before you is to find him guilty or find him not guilty. That is your duty under your oaths; the rest of it is my responsibility. If you can't decide under that there is no use keeping you any longer. There is no use for you to take over my job; we don't pay you for that. Go back and see what you can do."
With this rather salty admonition the jury retired to the box and returned shortly with a verdict of guilty. It then attempted to explain the reason for its question relating to the punishment that would be imposed if defendant was pronounced guilty. It also stated that it desired to make a recommendation but the court declined to accept it. This colloquy between the court and the jury, particularly the quoted response to the jury's request, is the basis of the first assignment of error.
We think this colloquy shows that the jury was in search of information to aid it in reaching a correct verdict. It also shows that the trial court misconceived the function of the court and the jury in a trial like this. It may well be that his admonition tended to frustrate or embarrass the jury and produced a verdict that it would not have returned if it had been given sympathetic and helpful treatment. In our system of jurisprudence, the jury is of ancient and constitutional sanction, Sections 3 and 11, Declaration of Rights, Constitution of Florida, F.S.A. and by the same token it is accorded a function on the horizontal with that of the trial judge. It is in no sense a menial to be ordered hither and yon by the court, it performs an extremely important duty and neither its duty nor that performed by the court can be done properly in the absence of mutual aid and assistance. It resolves controversies of fact about which the judge cannot speak or apply the rule of law till the jury announces its judgment. The law applied by the court arises from the factual truth adduced by the jury. In reality the trial of a case like this is nothing more than a realistic search for the truth by court and jury. The jury has a perfect right to return to the court room at any time and ask questions that are calculated to shed light on the controversy or that will in any way assist it or the court in developing the truth of the controversy. The question propounded by the jury in this case was well within the allowable ambit and we think it was entitled to a courteous, helpful answer. The law contemplates such questions. Sections 918.10 and 919.05, F.S.A. The writer of this opinion speaks from personal experience as a juror in holding that the court room behavior of the trial judge is the most potent factor in guiding the trial of any cause to a righteous verdict. To inspire public confidence in the method employed it is more important than all other factors combined.
It is next contended that the evidence is insufficient to support the verdict. The main witnesses for the prosecution were the prosecutrix, her father, brother and the policeman who arrested the defendant. The prosecutrix was seven years old at the time of the trial and was the only witness who testified to any criminal conduct on the part of the defendant, who was forty-three years old and unmarried. She testified that he put his hand on her leg. The incident took place in a movie theatre. The father, brother, prosecutrix and the defendant were in attendance. They were sitting in close proximity, the prosecutrix being only one seat removed from her father, yet he and the brother testified that they saw no criminal act on the part of defendant.
We make no attempt at a detailed review of the evidence but from an overall examination *727 it is apparent that the defendant was of diseased mentality. It is not possible to tell whether he is a psychotic, a neurotic, a pervert, a criminal or a maladjusted personality. After the verdict was in a doctor was consulted and he testified that defendant possessed no homosexual trends but that he was a psychopathic personality, afflicted with chronic alcoholism. Psychopathic personalities include chronic alcoholics, habitual criminals, ne'er-do-wells, those who persistently violate the codes and conventions of society and lead irresponsible, disorganized and worthless lives. They are different from neurotics only in the result of their behavior.
It is clear from the record that the jury was confused as to the defendant's mental status and its relation to the charge for which he was convicted. It did not have the advantage of the doctor's report, neither was it given the aid and sympathetic cooperation from the trial judge that it had a right to expect. We are not unmindful of the fact that along with many other gadgets, modern society has generated the abnormal personality, the psychopathic personality, the chronic alcoholic, the moral pervert, the pyschotic, the lounge lizard and many other species of fauna with abnormal mental deficiences. We can't tell which class comprehends the defendant, neither could the jury but they sensed that he had a sick mind. One of the glories of our democratic tradition is that when hauled into court these unfortunates are entitled to a fair trial.
For the reasons detailed, we do not think defendant was given a fair trial. The evidence was fantastic and the proof so unconvincing that we think the ends of justice require a new trial. The judgment is accordingly reversed and a new trial awarded.
Reversed for a new trial.
SEBRING, C.J., and CHAPMAN, ADAMS, and HOBSON, JJ., concur.
THOMAS, J., agrees to conclusion.
ROBERTS, J., not participating.