CARROLL, DONALD K., Judge.
The appellant was tried and convicted of a charge of second degree murder in the Criminal Court of Record of Duval County, and he has appealed from the judgment of conviction and sentence.
He was charged with second degree murder in shooting to death one Charles Howard Barr. The appellant and Barr had married sisters. The appellant’s wife, Leona, was separated from him and was temporarily residing at the home of her sister, Lottie Barr, and her brother-in-law, the decedent. On the date in question the appellant went to their home for the purpose of visiting his wife. The decedent was resting on a settee just inside the front door.
The only eyewitness to the tragedy who testified at the trial, other than the appel *82 lant himself, was the decedent’s widow, Lottie Barr. At the jury trial she testified, among other things: that after the appellant first came to their house, she saw him leave the house to “go get the gun”; that she saw his car, which was across the street from her house; that the appellant came hack into her house with the gun, having it underneath his arm, and, with his hand on the trigger, aimed the gun at her husband.
On cross-examination the appellant’s court-appointed counsel attempted to show that the above testimony was in conflict with the testimony she had given at a coroner’s inquest about three months before the trial. She admitted on this cross-examination at the trial that she had at that inquest testified, among other things: that she did not see the appellant’s car; that, when he returned to the house, she did not know how he was holding the gun when it went off; that “I do know I saw the gun when it went off. I can’t say how he held it, or anything at all about that.”
At the trial the appellant took the stand in his own behalf and testified that he first went to the Barrs’ house to see his wife, whom he saw come out of a back room; being suspicious that there was “another man in the room”, he walked toward her and she “came out with a pistol”; that he then left the house, while the decedent was still sitting on the settee near the front door, and went to his car to get his gun; he entered the house with his gun, which went off; that he did not aim his gun at the decedent or any one else and did not pull the trigger.
The testimony of the decedent’s wife, Lottie Barr, the only eyewitness who testified at the trial, other than appellant, was thus vital on the issue of the appellant’s guilt, and the appellant’s counsel in his argument to the jury attempted to point out the inconsistencies between Lottie’s testimony at the trial and that at the coroner’s inquest. This he had the right, if not the duty, to do.
While the argument of counsel at the trial does not appear in the record, it does seem clear from the record before us that when the prosecutor interrupted the argument of the appellant’s counsel to object to his use in his argument of the transcript of the testimony at the coroner’s inquest, a discussion ensued between these attorneys and the court, during which the court, in the presence of the jury, made the following statements, among others, to the appellant’s counsel, with reference to Lottie’s testimony at the trial the preceding day, and with reference to counsel’s remark that all he “wanted to do is to tell these gentlemen what she said”:
“Whatever she said yesterday, yes, sir, but there is nothing contrary to the evidence. In other words, you did-n’t go far enough on the impeachment. That is neither here nor there. Go ahead * * *. You asked her certain questions. Whatever she said on the stand there has been nothing contrary to what she said at the coroner’s inquest. I don’t want them to get the idea that at the preliminary hearing she testified so and so and so, and the only thing you have here is her testimony * * *. Well, let them trust their memories on that.”
The appellant in this appeal contends that the trial court erred in refusing to allow his counsel to point out in his argument to the jury the variances and conflicts between the questions and answers given before the coroner and those given at the trial.
We cannot say from our examination of the transcript of the trial proceedings that the trial judge positively refused to permit the appellant’s counsel to point out to the jury the inconsistencies in Lottie Barr’s testimony at the trial and that at the inquest, but in his statements quoted above in this opinion the trial judge certainly at least discouraged the making of such an argument and virtually charged the jury to disregard any such argument, saying in the jury’s presence “ * * * There is *83 nothing contrary to the evidence * * and “ * * * There has been nothing contrary to what she said at the coroner’s inquest.”
The making by the trial judge of these statements was clear error! We think the rights of the appellant were grievously prejudiced thereby. Apparently about the only defensive argument that was left to the appellant under the evidence at the trial was that the principal witness against him, Lottie Barr, was not entitled to belief because of inconsistent testimony she had previously given at the coroner’s inquest. The judge’s remarks, declaring categorically that there was no inconsistency, in effect was practically tantamount to giving a directed verdict against the appellant under the circumstances. Such a direction would have been improper.
Even if the trial judge believed there was no inconsistency (and we think that there was) in the testimony of Lottie Barr, he had no right thus to invade the province of the jury, the triers of the facts, and make such comments on the evidence.
The rule has long been established in this state prohibiting comments of this kind by a trial judge in the presence of the jury. As stated by the Florida Supreme Court in Lester v. State, 1896, 37 Fla. 382, 20 So. 232, 234:
“ * * * great care should always be observed by the judge to avoid the use of any remark in the hearing of the jury that is capable, directly or indirectly, expressly, inferentially, or by innuendo, of conveying any intimation as to what view he takes of the case, or that intimates his opinion as to the weight, character or credibility of any evidence adduced. All matters of fact, and all testimony adduced, should be left to the deliberate, independent, voluntary, and unbiased judgment of the jury, wholly uninfluenced by any instruction, remarks, of intimation, either in express terms or by innuendo, from the judge, from which his view of such matters may be discerned. Any other course deprives the accused of his right to trial by jury, and is erroneous. State v. Ah Tong, 7 Nev. 148; 1 Thompson on Trials, § 219, and citations.”
A discussion of this and other Florida cases on this subject may be found in the recent case of Kellum v. State, Fla.App.1958, 104 So.2d 99.
Finding reversible error by the trial court as set forth above, we need not consider and rule upon other points raised by the appellant in this appeal.
Judgment reversed.
WIGGINTON, C. J., and FUSSELL, CARROLL W., Associate Judge, concur.