185 So.2d 472 (1966)
James Edward COLEY, Alias "Sonny" Coley, Alias James Edward Brown, Alias "Sonny" Brown, Appellant,
v.
The STATE of Florida, Appellee.
No. 34094.
Supreme Court of Florida.
April 13, 1966.
Robert E. Hucker, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
HOBSON, Justice (Retired).
The appellant, who has more than one alias, will be referred to herein as James Edward Coley. He was indicted for rape by the Grand Jury of Duval County, Florida, on the 14th day of August, A.D. 1964, and went on trial for the alleged crime on November 23rd, 1964. On November 25th, 1964, the jury rendered its verdict of guilty without recommendation of mercy. Motion for new trial was timely filed. After hearing arguments upon said motion the trial judge entered an order denying the motion and at that time entered judgment and sentence, imposing the death penalty. Notice of appeal was filed February 19th, 1965.
We do not deem it necessary to dwell at length upon the facts which were developed at the trial of this case. This is so because our decision turns upon the proper answer to point number three raised by counsel for appellant which is: "Whether or not the Court commits [sic.] error in making certain remarks to the panel of jurors after they had been asked if they had conscientious objections to Capital Punishment in such cases where it is provided by law."
When this case came on for trial in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, the trial judge questioned the veniremen to ascertain *473 whether each was qualified to sit as a juror. After examination by the judge of the prospective jurors with reference to their qualifications generally, the State Attorney requested the Court "to ask the usual question of them about capital punishment." The judge honored this request. Upon being asked whether any of the veniremen had "conscientious scruples against the infliction of capital punishment in those cases where the law prescribed it," eleven of the veniremen answered in the affirmative.
The veteran trial judge queried each of the eleven potential jurors with reference to his asserted conscientious objection to capital punishment. At this juncture the court made the remarks which are challenged here as being prejudicial to the defendant and which appellant insists constitute harmful and reversible error. We quote said remarks from the transcript:
"Well, gentlemen, as I explained, the maximum penalty involved in the charge of rape is death by electrocution, and the law provides it. I realize some people don't believe in it, and I also realize that some of those people that say they don't believe in it, if their little daughter[1] or their wife was raped, they would believe in it fast. Or if their wife was murdered, or some of their family was murdered, they would holler to high heaven to get them a Courtroom, a Judge, and a Jury." (Italics supplied.)
The author of this opinion, who had the privilege of serving as a Circuit Court Judge for more than twenty years, realizes that the eminent jurist who presided at the trial of this case was undoubtedly provoked and perhaps indignant because he had the feeling that at least some of the self-styled conscientious objectors were not sincere and were seeking a means of evading jury duty. Nevertheless, whatever caused the provocation, indignation, however righteous, does not justify even an unintentional or unguarded violation of the rule laid down by the Supreme Court of Florida, as early as the year 1896, in the case of Lester v. State, 37 Fla. 382, 20 So. 232, 234:
"[G]reat care should always be observed by the judge to avoid the use of any remark in the hearing of the jury that is capable, directly or indirectly, expressly, inferentially, or by innuendo, of conveying any intimation as to what view he takes of the case, or that intimates his opinion as to the weight, character, or credibility of any evidence adduced. All matters of fact, and all testimony adduced, should be left to the deliberate, independent, voluntary, and unbiased judgment of the jury, wholly uninfluenced by any instruction, remarks, or intimation, either in express terms or by innuendo, from the judge, from which his view of such matters may be discerned. Any other course deprives the accused of his right to trial by jury, and is erroneous." (Italics supplied.)
The State insists that the presiding judge contemplated his oppugned remarks would be considered in their entirety and when so viewed are definitely innocuous. It is urged that the Circuit Judge merely observed, in effect, that "those who pretend that their conscience rails against capital punishment would, if a member of their family were murdered or raped, quickly demand  not death, as appellant seems to suggest  but rather simply a courtroom, a judge and a jury."
As lawyers and judges, we have little difficulty in agreeing that such was the construction which the erudite judge of the nisi prius court intended, but we cannot attribute to all of the lay members of the venire the power of analysis necessary to discern the suggested interpretation of the challenged remarks. This is particularly so in view of the fact that the opening remark of the trial judge dealt *474 with the crime of rape and capital punishment as the prescribed penalty. There was no suggestion of the possibility of a recommendation of mercy by a majority of the petit jurors. From this remark, the prospective jurors could have readily inferred that somebody's "little daughter or wife" had been raped[2] and that the judge not only believed in capital punishment but that the person found guilty of this, as yet unproven, charge of rape should receive the extreme penalty.
This remark was subject to such construction and was therefore harmful and prejudicial. The subsequent remark, directed to the suspected "feigners" who might have been attempting avoidance of jury duty and which covered only the topic  murder  with the concomitant prophecy that if a member of the family of one of the self-styled "conscientious objectors" were murdered such "objector" would "holler to high heaven to get them a Courtroom, a Judge and a Jury," did not cure the harmful effect of the initial remark.
The Attorney General appears to believe that the problem which confronts us in the instant case can be resolved in favor of the State's position by a careful consideration of our decision in the case of Baugus v. State, Fla. 141 So.2d 264. With this contention we cannot agree. In Baugus, the trial judge, although annoyed and perhaps irritated by the same suspicion which provoked the remarks challenged herein, merely advised the veniremen that their attempt, if it were such, to avoid jury duty would not work. He told the prospective jurors that he had arranged with one of his fellow circuit judges, who was trying civil law cases during that week, to use the "conscientious objectors" on the criminal court venire in the trial of civil cases. Moreover, in that case, we pointedly stated:
"* * * we cannot construe the remarks as indicating whether the judge, himself, did or did not believe in capital punishment."
Not so in the present case. The truly harmful remark made in this case was:
"* * * I realize some people don't believe in it and I also realize that some of those people that say they don't believe in it, if their little daughter or their wife was raped, they would believe in it [capital punishment] fast * * *." (Italics supplied.)
Wholly aside from whether a prospective juror believes in the State's policy of capital punishment, the remark made by the trial judge is subject to the interpretation that he believes in capital punishment and that it is proper punishment in a case where someone's little daughter or wife is raped regardless of mitigating circumstances. The remark was prejudicial in that it might have attitudinized the jurors against the accused, specifically with reference to a mercy recommendation, the intent of the presiding judge to the contrary notwithstanding.[3]
*475 We have many times observed that jurors are prone to be attentive to every indication by the trial judge of his appraisal of the accused and the view which he takes of any aspect of the case being tried in his court.[4] The judge's attitude, as it is gleaned by the jurors, is especially poignant in a criminal case.[5] We quote with approval from the opinion of the District Court of Appeals, Third District, in the case of Kellum v. State (Fla.App.), 104 So.2d 99, 104:
"Regardless of the proper intention of the court in making such remarks, in determining their effect on the jury we must consider that the high position which a judge holds in the scheme of the trial magnifies, in the minds of the jurors, the meaning of comments by the judge, to which he himself may not attach particular importance."
We now refer specifically to the decision and opinion of the Supreme Court of Florida in the case of Barnes v. State, 58 So.2d 157 (Fla. 1952), because one of the condemned remarks made by the State Attorney in his closing argument was so similar to the remark made by the trial judge in this case as to be indistinguishable. The State Attorney in the Barnes case made his remark in the form of a question. He queried: "What if it was your wife or your sister or your daughter that this beast was after?" In Barnes we quoted several other remarks which were challenged on appeal, but we stated that "All of the foregoing statements were highly prejudicial and improper, under the circumstances of this case." (Italics supplied.) We also said that "the remarks set-out herein were of such character that neither rebuke nor their retraction would entirely destroy their influence upon the jury." The case of Barnes v. State was reversed for a new trial.
We have considered the recent decision of this Court in the case of Collins v. State, 180 So.2d 340. In Collins we pointedly stated with reference to all of the challenged remarks, save one, that "there was ample basis in the record for the remarks made." In the present case no testimony had been taken at the time the oppugned remarks were made by the trial judge.
This Court in the Collins case said:
"In a separate category is the unfinished question: `I ask you, gentlemen, those of you who have daughters, if one of your daughters was violated .' Because objection was made and sustained at this point, neither the jury nor this Court can know what was going to be added. Any attempt to conclude this question would be mere speculation on their part and ours. So here, the inquiry must be not whether the question was improper, but whether the direction of the jurors' thoughts to their own daughters was fatal error despite the exclusionary ruling." (Italics supplied.)
Moreover, in Collins we distinguished Barnes v. State, supra, in the following manner:
"In Barnes v. State, 58 So.2d 157 (Fla. 1952), this Court held improper and beyond *476 cure by admonition, the question `What if it was your wife or your sister or your daughter that this beast was after?' There could be no doubt there what was intended by the prosecutor * * *." (Italics supplied.)
In the instant criminal action we think there can be little, if any, doubt what the trial judge intended. If, however, this should be an incorrect conclusion there can be no doubt that a lay juror might readily place upon the challenged remarks the construction we have heretofore outlined. We are persuaded to adhere to the pronouncement made in the opinion prepared for this Court by Mr. Justice Thornal in Pait v. State, (Fla.) 112 So.2d 380:
"We think that in a case of this kind the only safe rule appears to be that unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the judgment must be reversed." (Italics supplied.)
Appellant, under Point No. 1 in his brief, poses the question: "Whether or not the jury erred in finding the defendant guilty * * *?" We shall treat this as an assignment of error to the effect that the evidence is insufficient to support the judgment. It is, of course, not necessary in a case wherein the defendant has received the death sentence for him to challenge the sufficiency of the evidence on appeal. It is our duty under Appellate Rule 6.16 (b), 31 F.S.A. to "review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not." We have performed our duty in this regard and have determined that the evidence is sufficient to support the verdict and judgment.
Because of the prejudicial and harmful remark made by the trial judge, which we have heretofore discussed, our decision, however, must be one of reversal with directions that appellant be granted a new trial.
We are convinced that our decision herein is dictated by the following prior decisions of this Court: White v. State, 26 Fla. 602, 7 So. 857; Lester v. State, 37 Fla. 382, 20 So. 232; Leavine v. State, 109 Fla. 447, 147 So. 897; Sutton v. State (Fla. 1951) 51 So.2d 725; Barnes v. State (Fla. 1952) 58 So.2d 157; Seward v. State (Fla. 1952) 59 So.2d 529; Raulerson v. State (Fla. 1958) 102 So.2d 281.
Reversed and remanded for a new trial.
THORNAL, C.J., and DREW, CALDWELL and ERVIN, JJ., concur.
THOMAS and O'CONNELL, JJ., dissent.
NOTES
[1] The prosecutrix in this case was but 17 years of age at the time she was allegedly raped.
[2] An issue which was strictly one to be settled by the petit jury after having considered all of the evidence.
[3] We certainly cannot determine from the record that the remark, to which exception has been taken, did not prejudice the accused. Mr. Justice Thornal, speaking for the Court in the case of Pait v. State (Fla.) 112 So.2d 380, 385, 386, said:

"We are here dealing with a capital case. Under Section 919.23, Florida Statutes, F.S.A., the jury can absolutely control the punishment to be prescribed when it convicts an accused of first degree murder. The jury can recommend mercy without rhyme or reason. Its authority in this regard is bounded only by the conscience of the jurors. It is impossible to look at a set of facts and determine whether a jury should or should not recommend mercy. In practically every other type of verdict we can judicially examine the facts and determine whether they would or would not support the verdict regardless of the error. This is not so with regard to the power to recommend mercy because no facts at all are necessary to enable a jury to make the recommendation. Thus it is that an error which might be viewed as harmless under many circumstances can assume proportions of utmost importance when equated to the possibility of a mercy recommendation in a capital case.
"We think that in a case of this kind the only safe rule appears to be that unless this court can determine from the record that the conduct or improper remarks of the prosecutor did not prejudice the accused the judgment must be reversed."
[4] The late lamented Justice Terrell aptly stated in Sutton v. State (Fla.) 51 So.2d 725, 726:

"The writer of this opinion speaks from personal experience as a juror in holding that the courtroom behavior of the trial judge is the most potent factor in guiding the trial of any cause to a righteous verdict. To inspire public confidence in the method employed it is more important than all other factors combined."
[5] See Lewis v. State, 55 Fla. 54, 45 So. 998.