Sylvester Jackson AZBILL,
Petitioner-Appellant,

v.

Edwin T. POGUE, Warden, Nevada State Prison, State of Nevada,
Respondent-Appellee.

No. 75–1182.

United States Court of Appeals,
Ninth Circuit.

April 6, 1976.

Rehearing and Rehearing En Banc Denied June 7, 1976.

---

* Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation.

John Manzonie & Louis Wiener, Jr. (both argued), Las Vegas, Nev., for petitioner-appellant.

D. G. Menchetti, Deputy Atty. Gen. (argued), Carson City, Nev., for respondent-appellee.

OPINION

Before CHAMBERS, DUNIWAY and WRIGHT, Circuit Judges.

DUNIWAY, Circuit Judge:

Azbill, a Nevada state prisoner, appeals from an order denying a writ of habeas corpus. We reverse and remand.

On December 27, 1967, while his wife Rose was lying on a bed, Azbill doused it with charcoal lighter fluid and set it ablaze. Charged with murder, his principal defense was that Rose had died before the fire was set. He was convicted and sentenced to life without possibility of parole. While the state offered some evidence that Rose had died from asphyxiation,[1] its chief witness was Brad Azbill, petitioner's son, who was 12 years old at the time and saw the crime committed. When first questioned by police, Brad told them that he was intoxicated on the day of the fire and remembered nothing. During his appearance before the Grand Jury in January, 1968, Brad said that Rose was not "moving or talking and appeared to be dead . . ." before petitioner set the fire. *Azbill v. State,* 1968, 84 Nev. 345, 348, 440 P.2d 1014, 1016 (dismissing the original indictment). During the preliminary hearing and again at trial, Brad testified that Rose had "raised herself on the bed and mumbled something . . ." as Azbill was pouring lighter fluid around her. *Azbill v. State,* 1972, 88 Nev. 240, 243, 495 P.2d 1064, 1066.

Azbill's counsel sought to show that Brad had changed his testimony because he thought the District Attorney had intervened on his behalf with juvenile authorities to get them to withhold charges against him in connection with an automobile theft.[2] In a pre-trial order, the state trial judge prohibited inquiry "into any juvenile offenses or alleged juvenile offenses that he [Brad] may have committed." The judge said that he would let counsel ask whether Brad had been promised anything, or thought he had received something, in return for his testimony. Rather than engage in such a superficial inquiry into bias, Azbill's attorney ignored the subject, focusing his cross-examination on Brad's conflicting testimony and intoxication on the day of the crime.

---

1. Two of the state's three experts opined that the cause of Rose's death was ingestion of alcohol and barbiturates. A third disagreed, thinking that she died as a result of inhaling hot flames.

2. Azbill has never argued, either here or in the state courts, that the District Attorney was involved in the decision by juvenile authorities not to prosecute; rather, he argues that Brad erroneously believed that there was such involvement.

After his conviction was affirmed by the Nevada Supreme Court, *Azbill v. State,* 1972, 88 Nev. 240, 495 P.2d 1064, Azbill filed this federal habeas corpus petition, which the district court denied without a hearing. In an unpublished memorandum we reversed and directed that the district court hold an evidentiary hearing to determine whether Azbill had deliberately by-passed orderly state procedure. *Azbill v. Hocker,* May 3, 1974, No. 73–1502. The district court again denied Azbill relief, concluding that "counsel's neglect . . . gave rise to the kind of waiver that should be placed in the same category [as] a 'deliberate by-pass' of state remedies, barring subsequent collateral attack in the federal courts."

The finding of deliberate by-pass rests on the erroneous assumption that counsel could be required to ask Brad "*whether* he was biased, [although] counsel was unable to make a record from which to argue *why* [Brad] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . ." *Davis v. Alaska,* 1974, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355. This is precisely the dilemma that confronted counsel for Azbill and induced him not to cross-examine Brad about his juvenile offense.

 The rule that requires counsel to preserve an objection on review should not be so applied as to require that he abandon all hope of success at trial. *See Miller v. Carter,* 9 Cir., 1970, 434 F.2d 824. Azbill is not attempting to take advantage of error which he planted. *Cf. Sanders v. United States,* 1963, 373 U.S. 1, 10, 83 S.Ct. 1068, 1074, 10 L.Ed.2d 148, 158. He is not asking the district judge or this court to consider the effect of a ruling to which he did not object. *Cf. U. S. ex rel. Allum v. Twomey,* 7 Cir., 1973, 484 F.2d 740, 745. On the contrary, counsel made consistent vigorous attempts, at trial and on appeal to the Nevada Supreme Court, to overturn the restrictions on cross-examination which counsel contends were unconstitutional. We cannot agree that the decision not to question Brad to the maximum of the very narrow limits permitted by the trial court's order amounted to a deliberate by-pass or waiver.[3]

The order is reversed and the case is remanded for further proceedings based upon our decision that Azbill has not by-passed state remedies.

---

**3.** Because we hold that counsel did not by-pass state procedure, it is unnecessary to determine whether Azbill participated in his counsel's tactical decisions. *See Humphrey v. Cady,* 1972, 405 U.S. 504, 517, 92 S.Ct. 1048, 1056, 31 L.Ed.2d 394, 407; *Fay v. Noia,* 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869.