492 So.2d 1132 (1986)
Kenneth Leroy GAMBLE, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1652.
District Court of Appeal of Florida, Fifth District.
August 7, 1986.
*1133 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
Gamble appeals from a judgment and sentence entered against him for sexual battery.[1] We reverse for a new trial because the cumulative effect of multiple errors at trial denied Gamble a fair trial, and because the exclusion of testimony proffered by the defense relating to the prosecuting witness' propensity to tell lies, was harmful and reversible error in this case.
The second ground was clearly harmful and egregious because the state's whole case turned on the credibility of the prosecuting witness (Wiggins). Gamble and Wiggins were acquaintences. Gamble claimed Wiggins consented to have sex with him. Wiggins testified she was forced against her will at knife point. There were no other witnesses to the crime and no physical evidence of force or violence. No knife was found.
On cross-examination of Wiggins, defense counsel asked her whether she had a problem with telling the truth, or whether she told lies. Wiggins denied both questions. The defense then asked whether she made a statement to Eva Mae Smith (the mother of Wiggins' boyfriend) that she had such a bad problem with telling lies, she was seeking psychiatric help for it. Wiggins denied making the statement.
During its case, the defense attempted to present Smith who would have testified Wiggins told her she could not stop telling lies about people, and that she was getting psychiatric treatment. The court excluded Smith's testimony on the ground it related to a collateral matter.
A witness' credibility may be impeached by introducing statements of the witness which are inconsistent with his present testimony.[2] That is a traditional method of impeachment. 24 Fla.Jur.2d Evidence and Witnesses § 633. One requisite is that the proffered inconsistent statement must relate to a material matter or issue involved in the trial.[3] This rule was erroneously applied in this case.
Another equally traditional and well established method of impeaching a witness' credibility is to show through testimony of other witnesses or other means, that the witness has some defect in his capacity to accurately testify.[4] This may relate to the witness' memory, eyesight, ability to understand, or observe and a host of other things that might affect the witness' ability to observe, remember and accurately recount *1134 the matters about which he testified. A witness' mental state or condition is also a proper basis for this kind of impeachment. See Annot., 44 A.L.R.3d 1203 (1972). There is no requirement for this kind of impeachment that it be material and, therefore, not "collateral" to the issues at trial.
We think Eva Mae Smith's testimony regarding Wiggins' admissions that she lied and could not help herself was admissible to impeach Wiggins' credibility on this second ground. This impeachment testimony should have been admissible whether or not Wiggins made an inconsistent statement at trial. It related to her ability to testify truthfully at the trial in the same way the out-of-court admission of a witness that he was deaf would be admissible to impeach his testimony about what he overheard in a noisy room. The fact that the defect is established by the witness' out-of-court admission does not alter its basic nature as impeachment for lack of capacity or defect.
Additional errors occurred during Gamble's trial, which standing alone might not require reversal. However, their cumulative effect also mandates reversal.[5] We mention them briefly, so that on retrial they may be avoided:
(1) Landrum, Wiggins' landlord, would have testified she knew Wiggins' reputation for truthfulness in the community where Wiggins lived, and that it was poor. Her testimony was excluded, however, because she was unable to recall more than two specific conversations with people with whom she discussed Wiggins' reputation.
Although the trial judge has wide discretion in admitting or excluding this kind of testimony, we think the defense established at least a minimal basis to admit Landrum's testimony. 24 Fla.Jur.2d Evidence and Witnesses § 625. One learns of another's general reputation in a community over a period of time and through miscellaneous contacts with many people. Inability to recall specific names and times of conversations should not be a sufficient basis for exclusion, although it may affect its weight. In this case, however, two other witnesses testified on this issue and thus Landrum's testimony could be viewed as cumulative.
(2) The trial court limited defense counsel's cross-examination of Wiggins as to her relationship with her boyfriend. The defense sought to show that Wiggins falsely accused Gamble because she was afraid of her boyfriend, who was jealous and violent. The trial court refused to allow defense counsel to inquire as to the numerous specific times and dates the boyfriend beat and attacked Wiggins, although he was allowed to ask generally whether the boyfriend was jealous of her, and whether she feared him. He was also allowed to inquire whether the boyfriend broke Wiggins' jaw and other instances of physical abuse. However, his cross-examination was limited by the court's rulings.
The record shows Wiggins had executed thirteen arrest affidavits against her boyfriend over a two-year period of time. The exclusion of defense counsel's inquiry as to these specifics we think was error.[6] This was similar to serving up spice cake without the spice, or a bloody Mary without vodka. It is the specifics, the details, the nitty gritty of life that proves or disproves generalities and which permits effective cross-examination.
(3) During closing argument, defense counsel pointed out that a nurse who examined Wiggins after the alleged crime indicated in a document Wiggins told her she had been "bound" by Gamble during the commission of the crime. At trial, Wiggins denied she was ever "bound" or "tied up." When the state objected the trial judge told defense counsel that his statement was "not true."
*1135 The real issue was a semantic one: whether "bound" equates to "tied up" and whether the witnesses used them interchangeably. In any event, although it may have been proper for the trial judge to correct the exact words used in the hospital document, it was not proper for him to depart from his role as impartial conductor of the trial proceedings, by accusing defense counsel of being untruthful. Sutton v. State, 51 So.2d 725 (Fla. 1951); Moore v. State, 386 So.2d 590 (Fla. 5th DCA 1980); Lassiter v. State, 118 So.2d 81 (Fla. 1st DCA 1960).
(4) In addition to a number of prosecutorial excesses and hyperbole, which were timely objected to by the defense, the prosecutor deliberately misused his right to object to impeachment of Wiggins as a prior convicted felon. This method of impeachment of a witness' credibility is well established[7] and must be well known and understood by prosecutors and defense counsel alike.
In this case defense counsel had obtained a ruling before trial that he could ask Wiggins whether she had ever been convicted of an offense punishable by more than one year in prison. When this question was asked at trial, the prosecutor objected on the grounds that whether or not Wiggins had been previously convicted of a crime "has nothing to do with the issue of whether that man is a rapist or not."
Although the prosecutor's objections may have sounded plausible to the jury, the lawyers in the courtroom must have known defense counsel's impeachment of Wiggins was proper under our laws of evidence, and that the state's objection was totally frivolous. It was simply used as a ploy by the prosecutor to distract the jury from giving the impeachment its fair weight and value, and to provide a vehicle to accuse the defendant of being what the trial had been convened to prove he was: a rapist.
The trial judge attempted to give a curative instruction that the comment made in the course of the objection was "reprehensible" and should be disregarded. However, in view of the deliberate misuse of the objection process by the prosecutor, we question whether that was a sufficient reaction or cure. State v. Murray, 443 So.2d 955 (Fla. 1984).
REVERSED AND REMANDED.
UPCHURCH, C.J., and ORFINGER, J., concur.
NOTES
[1] § 794.011(4)(b), Fla. Stat. (1983).
[2] § 90.608(1)(a), Fla. Stat. (1983); 90.614(2), Fla. Stat. (1983).
[3] Myers v. State, 43 Fla. 500, 31 So. 275 (1901); Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981).
[4] § 90.608(1)(d); Padgett v. State, 64 Fla. 389, 59 So. 946 (1912); Dukes v. State, 442 So.2d 316 (Fla. 2d DCA 1983); Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980).
[5] Collins v. State, 423 So.2d 516 (Fla. 5th DCA 1982).
[6] Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Alvarez v. State, 467 So.2d 455 (Fla. 3rd DCA), review denied, 476 So.2d 675 (Fla. 1985); Yolman v. State, 469 So.2d 842 (Fla. 2d DCA 1985).
[7] § 90.610(1), Fla. Stat. (1983); King v. State, 431 So.2d 272 (Fla. 5th DCA 1983); Barber v. State, 413 So.2d 482 (Fla. 2d DCA 1982); see 24 Fla.Jur.2d Evidence and Witnesses § 626.