## WILCOX v STATE OF FLORIDA
### Case No. 89-5-AM (County Court Case No. 89-10211 TT 42)
Fifth Judicial Circuit, Lake County

February 22, 1990

### APPEARANCES OF COUNSEL

**Daniel J. Snow, Esquire,** Assistant Public Defender, for appellant. Office of the State Attorney, for appellee.

Before McNEAL, PETERSON, SAWAYA, JJ.

### OPINION OF THE COURT

McNEAL, R., Circuit Judge.

Appellant, Cynthia Wilcox, appeals a judgment and sentence entered by the Lake County Court after a jury trial finding her guilty of Driving Under the Influence of Alcohol. Appellant complains that the court improperly prohibited cross-examination of two officers regarding

social contacts they had with her subsequent to the arrest and that the court improperly excluded extrinsic evidence of those contacts. The state argues that the evidence was properly excluded because it was irrelevant to the issue of appellant's guilt and if the court was wrong, the error was harmless. We find that it was reversible error to exclude the evidence of contacts between appellant and Sergeant Jerry Chapel.

Appellant was arrested for Driving Under the Influence of Alcohol by a Leesburg Police Sergeant, Jerry Chapel, who observed her make a delayed stop at a red light. Officer Chapel required appellant to perform roadside sobriety tests that were observed by officer Peter Ahern. Then she was arrested and transported to the Lake County Jail for breathalyzer tests that resulted in readings of .12% and .13%. Appellant was released on her own recognizance.

Sergeant Chapel had social contacts with appellant after her arrest and before her trial. The first was at the police station where Sergeant Chapel and appellant discussed meeting at a local tavern to shoot pool. They had this discussion before he released her on her own recognizance.

The next contact was at the Post Time Lounge. Sergeant Chapel's version of what happened is substantially different from appellant's. Sergeant Chapel states that appellant approached him, embraced him and although apprehensive, he made a date with her. Appellant alleges that Sergeant Chapel told her he and Officer Ahern had been looking for her all evening in different lounges; that Sergeant Chapel followed her out to her car, embraced her and fondled her and she made a date with him in order to get away. This meeting was witnessed by a third party.

The next meeting was later that evening when Sergeant Chapel stopped by her home. Once again the versions of what happened are substantially different. Sergeant Chapel says that he had second thoughts about the date they had made and merely stopped by to break it in person. Appellant states that Sergeant Chapel, who had been drinking, invited her to breakfast, fondled her hair, held her hand and told her how badly he wanted to make love to her and only left after repeated requests. She also alleges that he hinted that the case against her would be "blown" if things went any farther, meaning he would blow the case if she established a relationship with him. This meeting was also witnessed by a third person. As a result of these contacts Sergeant Chapel was being investigated by the Leesburg Police Department at the time of trial.

Officer Ahern's only contact with Appellant subsequent to her arrest

occurred when he left a note on her car inviting her to his home for dinner. Appellant did not respond to the invitation.

Appellee moved in limine to exclude all evidence regarding the contacts by Sergeant Chapel and Officer Ahern because the contacts were not relevant to the issue of whether appellant committed the offense of Driving Under the Influence. Appellant argued that while irrelevant to the issue of guilt, this evidence was admissible to impeach the offficers' testimony. After considering a proffer, the trial court ruled that the evidence was irrelevant to the charge of Driving Under the Influence and granted the motion in limine.

Cross examination is the constitutionally guaranteed method of exposing bias, prejudice or motive of a witness. Defendant should be given a broad latitude on cross-examination to demonstrate bias or the possible motive of the witness to testify falsely. *Davis v Alaska,* 415 U.S. 308 (1974). *Fla. Stat.* § 90.608(1)(b) (1987) permits a party, except a party calling a witness, to attack the witness' credibility by showing the witness is biased at the time the witness testifies. Also, a jury may consider any interest the witness may have in the outcome of the case when weighing the witness' testimony. Fla. Std. Jury Instr. (Crim.) 2.04. *See also Lavette v State,* 442 So.2d 265 (Fla. 1st DCA 1983) (error to exclude evidence of witness' drug use following offenses committed with defendant); *Mendez v State,* 412 So.2d 965 (Fla. 2d DCA 1982) (error to exclude evidence of officer's prior suspensions for use of excessive force where defendant was charged with attempted second degree murder of the officer); *Jones v State,* 385 So.2d 132 (Fla. 4th DCA 1980) (error in possession of cocaine case to prohibit cross-examination about whether witness said that he was going to have the defendant killed); *Holt v State,* 378 So.2d 106 (Fla. 5th DCA 1980) (error to prevent inquiry into the details surrounding a grant of immunity to a prosecution witness); *Cowheard v State,* 365 So.2d 191 (Fla. 3d DCA 1978) (error to exclude evidence that witness was awaiting sentencing in federal court on an unrelated charge). Once a special motive to lie is established it colors every bit of the witness' testimony. *Azbill v Pogue,* 534 F.2d 195 (9th Cir. 1976).

Furthermore, bias of a witness is not a collateral issue. Counsel is not required to accept the answer of a witness denying the acts establishing bias, but may introduce extrinsic evidence to prove that the witness has a motive to testify falsely. *United States v Robinson,* 530 F.2d 1076 (D.C. Cir. 1976); *Brown v State,* 362 So.2d 437 (Fla.1978); *Lusk v State,* 531 So.2d 1377 (Fla. 2d DCA 1988); *Gamble v State,* 492 So.2d 1132 (Fla. 5th DCA 1986); *Hair v State,* 428 So.2d 760 (Fla. 3d DCA 1983).

38

Whether to allow this evidence is not limited by *Fla. Stat.* § 90.609 (1987) relating to impeachment by reference to witness' character or by *Fla. Stat.* § 90.610 (1987) relating to impeachment by conviction of certain crimes. These statutes prohibiting evidence of specific instances of misconduct do not apply to the evidence of bias or interest. For a good discussion of the relationship between the impeachment provisions of the evidence code, see *Gelabert v State,* 407 So.2d 1007 (Fla. 5th DCA 1981). Also, evidence tending to show bias is not limited by the scope of direct examination. *Yolman v State,* 469 So.2d 842 (Fla. 2d DCA 1985). The test is not whether the proffered evidence is relevant to the offense charged, but whether it is relevant to the witness' bias or interest at the time he testifies.

We find that evidence of the post arrest contacts of Sergeant Chapel with the appellant were relevant to Sergeant Chapel's possible bias against appellant at the time he testified and relevant to establish his interest in the outcome of the case. Improper conduct by a law enforcement officer with a defendant is a proper subject for cross examination, especially where a complaint has been made and the incidents are under investigation by internal affairs. A defendant *has an absolute right* to elicit evidence through cross-examination or other means that the arresting officer is under an internal investigation that could lead to criminal charges. *Hernandez v Ptomey,* 549 So.2d 757 (Fla. 3d DCA 1989) (error to exclude evidence that officer was under internal review investigation for actions in other cases); *D.C. v State,* 400 So.2d 825 (Fla. 3d DCA 1981) (error to refuse cross-examination of officers where defendant's sister filed charges against the officers for improper contacts); *Stripling v State,* 349 So.2d 187 (Fla. 3d DCA 1977) (error to refuse cross-examination to establish that officer was under investigation for alleged "shake downs"). Under those circumstances the officer may be trying to curry favor with the state or improve his position regarding the investigation. *Id.* at 191. The officer's testimony also may be influenced by fear of a potential civil suit or by anger because his sexual overtures to appellant were rejected. *See, e.g. United States v Gambler,* 662 F.2d 834 (D.C. Cir. 1981); *Kleinrichert v State,* 530 N.E. 2d 321 (Ind. Ct. App. 3d Dist. 1988).

Florida follows the harmless error rule in determining whether reversible error is committed when the trial judge restricts cross-examination. The state argues that the case did not stand or fall on Sergeant Chapel's testimony so the error was harmless. Had the state limited its prosecution to proof that appellant drove a vehicle with an unlawful blood alcohol level, that argument would carry more weight because the breathalyzer operator, not the arresting officer would be

the key state witness. But where the breathalyzer reading is in excess of .10% there is not a presumption of guilt and the jury may find the defendant not guilty. *Frazier v State,* 530 So.2d 986 (Fla. 1st DCA 1988), *Rolle v State,* 528 So.2d 1208 (Fla. 4th DCA 1988). The breathalyzer results do not establish harmless error. The appellate court must evaluate the record to determine not whether there was sufficient evidence of guilt, but whether the result would have been the same without the error. *Ciccarelli v State,* 531 So.2d 129, 131 (Fla. 1988). In this case we cannot say the verdict would have been the same if the defendant had been given the opportunity to presence evidence of Sergeant Chapel's possible bias and potential interest in the outcome of the case, so the error is not harmless beyond a reasonable doubt.

Sergeant Chapel initiated the case against appellant. He was a key witness and the only witness to her driving. The state chose to put on evidence of defendant's driving and her impairment, to confirm the breathalyzer results and to show that she drove while under the influence of alcohol to the extent her normal faculties were impaired. Thus the observations of appellant's driving and physical condition at the time of arrest are crucial to the outcome of the case. Once direct testimony was offered on these issues, Sergeant Chapel's possible motives to falsify this testimony was a proper subject of cross examination.

This is especially true here because Sergeant Chapel's testimony paints an entirely different picture of appellant's driving than the incident report. The incident report indicates she did not stop for the red light in time. The testimony at trial reads as if she was going dangerous fast, ran a red light, came to a stop in the path of the officer's vehicle, caused the officer to brake to avoid an accident and did not stop her vehicle in response to the officer's emergency lights because she was oblivious to his presence behind her car. The statements in the report were embellished at trial. Appellant was entitled to determine through cross examination if the officer had a motive to distort these facts.

The only evidence of contact between Officer Ahern and appellant was the note he left on her car. There was no evidence of conversations between them and no alleged misconduct. Because the contact was insignificant, the potential for establishing possible bias or interest was limited. Furthermore, Officer Ahern was not a key witness in the state's case. Any error in excluding this testimony was harmless.

We realize that the decision confronting the trial judge was not simple. By allowing the proffered cross-examination the court would

40

open a can of worms that was not easy to control. During trial the state tried to avoid testimony regarding appellant's dress and her actions at the scene of her arrest and earlier that evening. If appellant persists in her desire to cross-examine Sergeant Chapel about his later contacts with her, some of this testimony may be relevant to corroborate his testimony that she initiated the contacts, not him. It is unfortunate, but the actions of the officer calls into question not only his own motives for testifying, but the integrity of the criminal justice system. If the case is to be tried, the interests of justice require that the entire story be told.

The remaining question on appeal concerns appellant's right to present extrinsic evidence of the contacts between her and Sergeant Chapel. Because her testimony and the testimony of her witnesses are substantially different than Sergeant Chapel's, she is not required to accept his description of the facts and may offer extrinsic evidence of bias and interest through direct testimony of witnesses.

For these reasons, the Judgment and Sentence are REVERSED and the case REMANDED for a new trial.

PETERSON, E., and SAWAYA, T., concur.