CAMPBELL, Judge.
Appellant, who was found guilty by a jury of armed burglary, attempted armed robbery, first degree murder and armed robbery, raises five points on appeal, none of which have any merit. We, accordingly, affirm.
Appellant and another man, both armed, kicked down the front door of Mia Brown’s apartment looking for drugs and ended up robbing her. Brown thought that appellant’s *32 weapon “looked like” a .9 millimeter gun. Walter Bellamy, who was in the apartment at the time visiting Brown, fled out the front door, and appellant turned and fired one shot at him. The other man followed Bellamy out of the apartment. Appellant then took Brown to her bedroom, robbed her and left. While the two men were both inside her apartment, Brown saw a shadow outside, leading her to believe that a third man was involved. After the two men left, a third man came to her door and quickly left. Brown saw this third man and appellant running together across a field near her apartment. Bellamy was found shot dead, with his pockets picked, just around the corner from Brown’s apartment. He had been shot by a .22 caliber weapon. Appellant used an alibi defense.
Appellant argues first that the court erred in admitting the testimony of Brown’s neighbor, Levatt, who testified that Brown had appeared at her door, crying, saying that “Heavy D” (appellant) had just broken into her apartment and robbed her. It is appellant’s position that this testimony served merely to bolster Brown’s earlier testimony, and that there was no express or implied charge of recent fabrication. See § 90.-801(2)(b), Fla.Stat. (1991). The State maintains that appellant’s attorney failed to make a timely and contemporaneous objection and that Levatt’s testimony was harmless in any event. We agree with the State’s analysis.
When Levatt first testified that Brown had appeared at her door, crying and saying that Heavy D had broken into her apartment, appellant’s counsel did not object. It was not until the State asked Levatt, “Did she tell you anything else about what had happened,” that appellant’s counsel made the following objection: “Excuse me, Judge. I would object to hearsay at this point in time, anything that she said.” The court sustained the objection at first, but when the State claimed that it intended to offer it as a prior consistent statement, the court indicated it would allow the testimony. After the court explained: “I don’t know what she’s going to say, but if the answer is yes, then it is a prior consistent statement,” appellant’s attorney stated:
I understand that. What I’m asking is that the State not keep publishing what their intent — or scolding me. Why I’m trying to show this is a prior consistent statement. That’s the Court’s ruling, that’s not — she can make an objection here at the Bench. I just don’t think it’s the right way to do that.
(Apparent reference to State’s comment being made in jury’s hearing (R 139).)
By his statement then, appellant’s attorney did not appear to continue his objection, but seemed to acquiesce in the court’s ruling regarding the prior consistent statement.
Significantly, although appellant argues now that there was no express or implied charge against Brown of improper influence, motive or recent fabrication, during his cross-examination of Brown, appellant’s attorney introduced what he described as Brown’s prior inconsistent statement as impeachment. This is more than the “general attack” on credibility that appellant maintains occurred.
Even if Levatt’s testimony was improperly admitted as a prior consistent statement, it could have been properly admitted under section 90.803(1), Florida Statutes (1991), as a “spontaneous statement describing or explaining an event ... made while the declar-ant was perceiving the event ..., or immediately thereafter,” or under section 90.803(2), Florida Statutes (1991), as a “statement or excited utterance relating to a startling event made while the declarant was under the stress of excitement caused by the event....” As in McDonald v. State, 578 So.2d 371 (Fla. 1st DCA), rev. denied, 587 So.2d 1328 (Fla.1991), the statement was admissible under these provisions because it is undisputed that the “victim made the statement to her friend immediately after the attack, and that she was ‘hysterical and crying1 when doing so.” Id. at 374.
Finally, we observe that, as the State correctly observes, appellant’s counsel failed to object to Detective Noblitt’s testimony concerning virtually the same information. We thus agree with the State that even if the testimony was improperly admitted, its admission was harmless. The verdict could not *33 have been affected by this error. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Appellant’s second point is that the court should have granted his motion for mistrial because the State’s witness, Hollis, improperly referred to a collateral offense, that appellant had violated probation. Hollis was testifying that while he and appellant were in county jail together, Hollis had asked appellant why he was there, and appellant told him, “some kind of violation.” Appellant’s attorney objected on the grounds that this statement would imply to the jury that appellant was in county jail for violating his probation. The court denied appellant’s motion for a mistrial and did not give a curative instruction for the following reasons:
Well, number one, he didn’t say the second word, and I’m not sure this jury is knowledgeable enough in criminal procedures to know what he meant. And I’ll be happy to give a curative instruction. My concern is if I give any curative instruction it would do more harm than good.
We agree with the trial court. This error was not so prejudicial as to vitiate the entire trial. See Duest v. State, 462 So.2d 446 (Fla.1985). This was such a vague and oblique reference that it is extremely unlikely that the jury knew that the reference was to a probation violation.
We conclude that any error here was harmless.
Appellant also contends that the court improperly refused to allow him to cross-examine Hollis regarding Hollis’ pending fraud charges. Our review of the record reveals, however, that the cross-examination was properly conducted. When Hollis was asked how many felony convictions he had, he gave a correct answer. Following this truthful answer, the details of those offenses may not be inquired into. McArthur v. Cook, 99 So.2d 565 (Fla.1957). The case cited by appellant, Gamble v. State, 492 So.2d 1132 (Fla. 5th DCA 1986), involves a woman’s mental inability to tell the truth, and so does not apply here.
We see no error here.
Appellant’s fourth point is that there is insufficient evidence to sustain his conviction for first degree murder. We disagree. Under State v. Law, 559 So.2d 187 (Fla. 1989), where there is substantial, competent evidence to support the jury verdict, this court will not reverse.
We conclude that there is such a quantum of evidence here. As the trial court observed, the sequence of events would lead a reasonable person to conclude that Bellamy was killed by other persons, probably the second man, in the perpetration of the robbery or burglary. Although appellant was carrying a .9 millimeter weapon and Bellamy was killed by a .22, the record contains no evidence of what type of weapon the second man was carrying. In view of the following facts, no reasonable person would conclude that Bellamy was killed by any other than the individuals involved in the robbery/burglary: Bellamy was found shot dead twenty feet from Brown’s apartment only minutes after the break-in, a trail of blood led from Brown’s apartment to where he was found, he was shot at by appellant while fleeing the apartment and was immediately chased by the second man. On these facts, we conclude that appellant was properly convicted of felony murder.
Appellant’s last point is that even though he and his trial counsel waived the jury instruction on manslaughter and depraved mind second degree murder, the waiver was not knowingly and intelligently made. He bases his argument on the rule that, in assuring such voluntary waiver, the court is required to make a sufficient inquiry. See Harris v. State, 438 So.2d 787 (Fla.1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984). Our review of the record leads us to conclude that appellant’s express waiver here was sufficiently knowing and intelligent under Harris. The court inquired of appellant as well as his attorney, and both agreed that the manslaughter and the second degree depraved mind murder instruction would not be given.
For the above reasons, we affirm.
RYDER, A.C.J., and THREADGILL, J., concur.