ON MOTION FOR WRITTEN OPINION
TORPY, J.
We grant the motion for written opinion, withdraw our prior disposition without opinion, and substitute this opinion in its stead. The sole issue on appeal is whether the trial court abused its discretion in excluding the testimony of a witness who would have testified concerning the victim’s character for truthfulness. We conclude that the trial court did not abuse its discretion when it excluded the testimony based on an inadequate foundation. Alternatively, we conclude that any error was harmless.
Appellant challenges his conviction for aggravated battery with a deadly weapon or bodily harm of his then girlfriend, Ms. Finnie, who sustained a stab wound to her hand during an altercation between the two. The defense theory was that Ms. Finnie had been the aggressor in the confrontation. Several witnesses testified on behalf of the State: the victim, her son, and police who investigated the incident.
The defense offered the testimony of the victim’s cousin, Mr. Bass. He testified that the victim told him after the incident that “she had a knife waiting for [Appellant] sitting in the windowsill.” Mr. Bass also testified that Ms. Finnie advised him that she could not remember how she was injured because it happened so fast. The defense attempted to introduce testimony from Mr. Bass related to his knowledge of Ms. Finnie’s character for truthfulness. In a proffer made outside the presence of the jury, Mr. Bass testified to the following, upon questioning by defense counsel:
So do you — have you ever spoken with other family members concerning Miss Finnie? &
A. Spoken with them in terms of regards to what?
Her truth, veracity, anything along those lines. <y
Yes. <!
Okay. And outside of the family, like other members of you-all’s community grouping, have you ever talked to any of those people and her name comes up? 0
Yes. >
And have — as far as her reputation within the community, in speaking with these people, what is that? £>
A. She’s simply like a day-and-night person. On the one hand, she’s one way, people would think that she was, you know, a good person, but on the other hand, you know, she’s got a real deep, dark side.
Well, I guess you were looking for her — you know, things along the lines of her truth, veracity. <©
A. Right. She’s a — she’s a very good liar.
Okay. &
And— <4
So that would be, no, she doesn’t have good truth or veracity? &
No, she doesn’t. <j
And this opinion — I mean, it’s not based on just gossip or rumors that these people and that you have about her general reputation; is that true? &
Is it just S>
No. Is it just — I mean, it’s not based on gossip <©
No. No, it’s— !>
—and rumors? <©
—based on firsthand knowledge. i>
*709 Q. Okay.
When cross-examined during the proffer about his knowledge of Ms. Finnie’s reputation, the following occurred:
Q. Now, you said you’ve had thi— you’ve talked about [Ms. Finnie] with other people. Who?
A. What do you mean?
Q. Give me names of people you’ve talked to about [Ms. Finnie] and her reputation in the community. I need names, who you’ve talked to.
A. Well, I’ve spoken with my aunt about her.
Q. What’s her name?
A. Her name’s Lily Finnie.
Q. That’s your aunt?
A. Yes.
Q. Okay. Who else?
A. I spoke with my cousin about her, Carleetha Lamons.
Q. Okay.
A. I spoke with Shauna’s ex.
Q. Who’s that?
A. Marcus. Marcus Phillips.
Q. All those people you’re describing, they’re relatives or people in the same group of people that run together, right?
A. Well, my — my mother also. My mother, my aunt, my grandmother, my cousin — all of these are family members.
Q. And these conversations you’ve had, what are — tell me the conversations.
A. Well, how nasty [Ms. Finnie] could be.
Q. Nasty?
A. Yes.
Q. Okay.
[[Image here]]
Q. Have you talked to these people about her reputation for truthfulness or that she’s nasty?
A. Both.
Q. You sit there around the kitchen and say you know what [Ms. Fin-nie’s] reputation amongst the community is for dishonesty. That’s not true, is it?
A. Sir, this is a family member and we deal with her on a daily basis.
Q. A family member?
A. Right. And we deal with her on a daily basis.
The trial court excluded the proffered testimony, concluding that Appellant failed to establish a sufficient predicate because the witness did not have sufficient broad-based knowledge from the community concerning the victim’s reputation. The trial judge said:
I do not believe a sufficient predicate has been laid for the reputation evidence. There’s not been any evidence in a broad section of the community, and simply talking amongst family members is not sufficient; and, therefore, I’m not going to allow the reputation testimony.
Appellant argues that the trial court should have permitted the testimony of Mr. Bass. Specifically, Appellant argues that any perceived deficiency in the predicate goes to the weight of the testimony, rather than its admissibility. We disagree and affirm.
Character evidence of the sort here may only be introduced in one form— reputation. § 90.609, Fla. Stat. (2012). This form of evidence is thought to be reliable because it is the “product of what is generally discussed in the community.” Charles W. Ehrhardt, Florida Evidence § 405.1 (2012). Reputation evidence is just that — evidence of one’s reputation in the community for a particular character *710 trait. It is not the personal opinion of the testifying witness or evidence of specific acts of untruthfulness. Because this form of evidence is hearsay by its very nature, its admission is controlled by section 90.803(21), Florida Statutes, which is the hearsay exception for reputation testimony. Ehrhardt, supra, § 609.1. Section 90.803(21) only permits evidence of reputation “among associates or in the community.” The “community” must be “sufficiently broad-based” so that the reputation evidence is not merely based on “ ‘fleeting encounters, or rumor.’ ” Lott v. State, 695 So.2d 1239, 1242 (Fla.1997) (quoting Rogers v. State, 511 So.2d 526, 530 (Fla.1987)).
The proponent of reputation evidence must “lay the foundation that the witness is aware of the person’s reputation in the community.” Ehrhardt, supra, § 609.1. The party opposing the introduction of the evidence has the right to test the sufficiency of the foundation through cross-examination. Id. The factual determination of whether the impeachment witness is sufficiently familiar with the reputation of the witness is a preliminary question of fact to be determined by the trial judge based on a preponderance of the evidence, pursuant to section 90.105. Ehrhardt, supra, § 105.1. In this regard, the trial judge’s function is the same for this form of evidence as other forms of evidence that require a factual foundation for admission. See, e.g., Coney v. State, 653 So.2d 1009, 1012 (Fla.1995) (whether hearsay qualifies as dying declaration is preliminary question for judge); see also Ehrhardt, supra, § 609.1 (“[T]o be admissible, the trial judge must find that the witness is in fact aware of the person’s reputation and not the impression of one or two individuals or the personal opinion of the witness.”); Feller v. State, 637 So.2d 911, 916 (Fla.1994) (reliability of hearsay evidence function of court prior to admission, not jury); Mariano v. State, 933 So.2d 111, 113 (Fla. 4th DCA 2006) (whether statement was excited utterance is question for court); Eh-rhardt, supra, § 702.1 (whether witness is qualified as expert is preliminary question of fact for trial judge prior to admission of expert’s opinion). We review these preliminary determinations under an abuse of discretion standard. Lott, 695 So.2d at 1242.
Accordingly, appellate courts have upheld the exclusion of character-for-truthfulness evidence when the source of the hearsay is too narrow or where the testifying witness does not actually know the person’s reputation in the community. See, e.g., Ibar v. State, 938 So.2d 451, 469 (Fla.2006) (evidence inadmissible when based on conversation with family members and employee of state attorney’s office); Lott, 695 So.2d at 1242 (exclusion of character evidence was within trial court’s discretion where it was based on witness’s and his family’s experiences, rather than broad-based community knowledge); Larzelere v. State, 676 So.2d 394, 400 (Fla.1996) (no abuse of discretion in denying testimony derived from limited period of time, limited number of people, and narrow section of community); Gonzalez v. State, 871 So.2d 1010, 1011 (Fla. 4th DCA 2004) (reputation within family too narrow segment of community; source of evidence must be sufficiently broad to enhance its reliability); Wisinski v. State, 508 So.2d 504, 505 (Fla. 4th DCA 1987) (reputation must be based on more than three or four persons); Fike v. State, 455 So.2d 628, 629 (Fla. 5th DCA 1984) (reputation of witness among criminal defense lawyers too narrow).
Here, the trial court was well within its discretion in excluding the proffered testimony. The questions used to develop the foundation for this testimony were inartful at best. What was meant by *711 “community grouping” is unclear, but a fair reading of the entire testimony supports the trial court’s conclusion that the source of the purported reputation was limited to the victim’s family. Although one’s reputation within one’s family might be logically probative, it is simply not admissible under section 90.803(21) because family members are neither “associates” nor the “community.” See Ibar, 938 So.2d at 469 (evidence inadmissible when based on conversation with family members and employee of state attorney’s office); Gonzalez, 871 So.2d at 1011 (reputation within family too narrow segment of community; source of evidence must be sufficiently broad to enhance its reliability). Even assuming Mr. Bass’s proffered testimony was sufficiently based on the relevant community, his answers were confusing, inconsistent at times, and unresponsive. It is unclear from the testimony whether Mr. Bass was offering reputation evidence based on rumor or his personal opinion about Ms. Finnie’s veracity from his “firsthand knowledge.” The trial judge was in the best position to evaluate this testimony and make a preliminary finding of fact whether the witness was truly familiar with the reputation of the victim in the “community” or among her “associates,” as the statute requires. We cannot disturb this finding under our standard of review.
Appellant places primary reliance on two decisions from our sister court, with which he urges we are in conflict: Muir v. State, 987 So.2d 230 (Fla. 4th DCA 2008); Palmer v. State, 978 So.2d 282 (Fla. 4th DCA 2008). These decisions are at the center of Appellant’s request for a written opinion and asserted belief that further review might be available. We initially dismissed the specter of conflict because the relatively brief opinions do not set forth the substance of the cross examinations wherein the state attempted to “undermine the predicate.” Without those facts, the opinions are not particularly instructive. Appellant interprets these decisions to stand for the proposition that any challenges to the foundation for this form of evidence fall within the exclusive province of the jury, rather than the trial judge, because the challenges go to the weight and not the admissibility of the evidence. In other words, once the impeachment witness makes the conclusory assertion that he is familiar with the witness’s reputation for veracity in the community, the evidence must be admitted, despite the effectiveness of challenges to “undermine the predicate.” Appellant’s interpretation finds some support in the language of the opinions. If this is what was intended in these decisions, the opinions offer no analysis or authority to support such a proposition, which is clearly contrary to section 90.105 and controlling precedent. We thus acknowledge that our decision today might be in conflict with Palmer and Muir, although it is in harmony with an earlier decision from the same court, Gonzalez, 871 So.2d 1010.[1]
Lastly, we address the State’s alternative contention that any error here was harmless. Mr. Bass was permitted to testify regarding the statements made to him by Ms. Finnie. These statements, if *712 believed, would have clearly contradicted Ms. Finnie’s testimony. Obviously, the jury rejected this testimony, perhaps because Mr. Bass was not the model of good character himself. He admitted that he had been convicted of eight crimes, four of which were felonies and four of which were crimes involving dishonesty. Under the facts of this case, the addition of Mr. Bass’s view on the character of the victim would have added nothing to enhance his credibility and not changed the outcome.[2]
AFFIRMED.
ORFINGER, C.J., and EVANDER, J., concur.

. Gamble v. State, 492 So.2d 1132 (Fla. 5th DCA 1986), also cited by Appellant is distinguishable. Gamble simply stands for the proposition that an impeachment witness’s testimony is not inadmissible because he cannot remember who he talked to in the community. In this case, the basis for excluding the witness was that the witness only talked to family members. The function of the trial judge in evaluating the foundation is to determine factually whether the impeachment witness really knows the witness’s reputation and whether that reputation is among associates or from the community of the witness who is the subject of the impeachment.

. The persuasive effect of reputation evidence on juries is unclear. When presented properly, the evidentiary presentation is very brief and seemingly lacking in substance. Although theoretically reliable, the notion that unsubstantiated gossip may be considered as evidence is counterintuitive.